## DECLARATION of JUAN SIERRA

I, Juan Sierra, do hereby declare:

## BACKGROUND/EXPERIENCE

1.       I am a Special Agent (SA) with the Drug Enforcement Administration (hereinafter "DEA"), United States Department of Justice. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I also am responsible for investigating drug related crimes within the United States. Under 21 U.S.C. § 878, I am empowered to make arrests, obtain and execute search warrants, and to make seizures of property pursuant to Subchapter I of Chapter 13 of Title 21 United States Code.

2.       My current assignment is the Eugene Resident Office.  My job assignment includes, but is not limited to, the investigation of violations of Title 21, United States Code, Sections 841(a)(1), 846, 843(b), and 856, which includes the detection, identification, and apprehension of those individuals involved in narcotics trafficking offenses.   My training and experience include completion of DEA basic training: the investigation, detection, and identification of controlled substances and conspiracy and complex investigations.  Additionally, I have participated in numerous narcotics investigations since my employment with the DEA as a case agent, undercover agent, and surveillance agent.  I have consulted and conversed with numerous other agents from various local, state, and federal agencies on drug cases of all types.  I have interviewed and operated informants, executed search warrants, arrested, and interviewed subjects involved in the smuggling and distribution of narcotics, conducted physical surveillance, and utilized electronic and video surveillance.  I am familiar with investigations of Drug

Declaration of Juan Sierra

Exhibit A
Page 1

Trafficking Organizations (hereinafter, "DTOs"), including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed.  I am also familiar with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs.

## PURPOSE OF THE DECLARATION

3.      This declaration is submitted in support of a civil complaint *in rem* for forfeiture of multiple items to include: $402,740.00 United States Currency; Assorted Precious Metals (Gold and Silver coins/bars) valued at $279,183.10; a 2012 Dodge Ram 3500 Truck with 2014 Transfer Flow In-Bed Auxiliary Diesel Fuel Tank; a PJ 5th Wheel Low Pro Flatbed Trailer with Ramp; a Kubota SVL95-2S Track Skid Steer; a Kubota KX040-4 Excavator; a 2016 Load Trail Tilt Deck Trailer; a 2020 Dodge Commercial Ram 3500 Truck; a Carry-On Trailer Corp. Patriot Dump Trailer; a 2020 MultiQuip QP-2TH Water Pump with trailer; and a JCB 8035ZTS Compact Excavator, seized from Robert Jones (R. Jones) and Robin Prinzing (Prinzing) on August 17, 2022, during the execution of a State of Oregon search warrant at 31302 Cow Creek Road, in Glendale, Oregon.  As discussed below, I believe there is probable cause that the above listed assets are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as money or other things of value furnished or intended to be furnished in exchange for a controlled substance or proceeds traceable to the exchange of controlled substances in violation of 21 U.S.C. § 841(a)(1). This declaration does not include all of the facts known to me regarding this

investigation, only those sufficient to establish probable cause to forfeit the above referenced items.

## SUMMARY OF THE INVESTIGATION

4.      On August 16, 2022, the Douglas Interagency Narcotics Team (DINT) was granted a State of Oregon search warrant for 31302 Cow Creek Road, Glendale, Oregon, to search for evidence of sales, manufacture, and possession of controlled substances, specifically marijuana.  The warrant was based on information obtained by DINT investigators conducting physical surveillance on the property and through commercial and law enforcement data base checks for marijuana licenses registered to the property. On July 26, 2022, DINT conducted an overhead flight on the property and observed more than 150 cannabis plants being grown on the property, as well as two greenhouses covered with clear plastic. Additionally, investigators observed two metal shipping container boxes and a large plastic water storage tank.

5.      In that same month, DINT investigators conducted a check through the Douglas County Assessor's Office and learned that the owner of the residence was Joshua Jones, and the property was purchased on April 30, 2021.  On August 3, 2022, DINT investigators conducted checks for the cultivation of marijuana or hemp through the Oregon Department of Agriculture (ODA), Oregon Liquor Control Commission (OLCC), and the Oregon Medical Marijuana Program (OMMP) on 31302 Cow Creek Road, Glendale, Oregon. Investigators determined that there were no current hemp licenses through ODA, no permits through OMMP, and no pending or active licenses through OLCC.

6.      Investigators then drove by the residence in the following days and observed that the property was surrounded by thick trees making it difficult to observe from the street. However, investigators did observe numerous vehicles parked at the residence, some of which were found to be registered to R. Jones.

7.      On August 17, 2022, DINT, along with DEA, served the search warrant at R. Jones' residence. Law enforcement first contacted a male subject named Kenneth Putman (Putman), who worked on the property as a caretaker for animals and landscaping. Putman told investigators that the marijuana grow was separate from his responsibilities, and he did not have anything to do with it. Putman also stated he did not know who the marijuana belonged to and believed it was leased out by the owners of the land.

8.      Investigators then located and spoke with R. Jones at the main residence. R. Jones was advised of his Miranda Rights at that time. When investigators asked R. Jones about the marijuana grow, R. Jones advised he wanted to speak to an attorney before answering any questions. Investigators then contacted Prinzing, inside the main residence. Prinzing told investigators that she had nothing to do with the marijuana grow. After being read her Miranda Rights, Prinzing told investigators that she would plead the fifth, but then stated that she knew the marijuana grow was there (on the property), that was all she knew about it.

9.      Outside the main residence, investigators located the following: two greenhouses, constructed with ventilation fans and irrigation systems, which contained marijuana plants that were planted above ground in pots; outdoor rows of marijuana plants; two metal transportation containers (Conex boxes), which were modified with

Declaration of Juan Sierra                                      Exhibit A
                                                                 Page 4

extensive electrical systems, de-humidifiers, fans, and drying panels for the manufacturing of marijuana; water storage containers near the marijuana plants; and all the previously listed vehicles/equipment. In total, investigators seized and destroyed about 320 marijuana plants, and about 1,650 pounds of processed marijuana product and marijuana concentrates. Investigators also tested the marijuana on site using an Orange Photonics Light machine and confirmed the cannabis as being marijuana and not hemp.

10.    Investigators also located an extensive Butane Honey Oil (BHO) processing lab in the shop/barn on the property. From the lab, investigators located and seized about 525 pounds of processed marijuana concentrate wax. Investigators also located empty and filled vape cartridges of BHO, which had the brand of "OGM" and was being manufactured at the residence.

11.    Upon searching the inside of the main residence, investigators located a hidden crawl space in the downstairs hallway, under the hard wood flooring. In the crawl space, investigators located a green ammunition storage container labeled "box one" which contained $350,000.00 in various denominations.  Scattered in other locations of the main residence, investigators located more bulk cash; the total amount seized was $402,740.00. Investigators also located a red ammunition storage container labeled "box three" in the same crawl space which contained about 167 gold and silver coins. Additionally, investigators located large amount of gold and silver coins and bars in a safe in the home office, a desk drawer, in an upstairs bedroom, and in the master bedroom.  All of the gold and silver seized was later valued at $279,183.10.

12.    Investigators also located and seized many documents from the home office, which referenced personal finances, businesses, marijuana manufacturing and

delivery, weapons inventories, equipment inventories, etc. The documents also showed extensive involvement related to R. Jones and Prinzing being involved in business with R. Jones's son, Joshua Jones (J. Jones). Invoices dated recently in 2022, showed purchases of equipment which were paid in cash for amounts up to $70,000.00.

13.     After going through the documents and reviewing more information on the history of the property, investigators discovered the following information. A review of aerial images of the property via Google Earth documents the development of the area of the marijuana grow with excavation equipment since approximately 2017. It was determined the property had been purchased and was owned by R. Jones and J. Jones under a business from approximately the end of 2016 until J. Jones took full ownership in 2021 with rent being paid to J. Jones by R. Jones. It was also determined there were additional illegal marijuana grows being operated in Douglas County and Josephine County, Oregon, with involvement of all three:  R. Jones, J. Jones, and Prinzing. As a result, DINT investigators obtained a search warrant for a residence owned by Meadowrock Investments, which is a business owned by J. Jones (995 Reuben Road, Glendale, Oregon) and passed information to investigators in Josephine County, Oregon for a second property owned by Meadowrock Investments (801 Coyote Creek Road, Wolf Creek, Oregon). At the residence on Rueben Road, Investigators seized about 110 marijuana plants and seized more than 3,000 marijuana plants and more gold/silver and US currency at the Wolf Creek residence. Due to the volume of documents located in the residence, investigators seized and photographed the paperwork for analysis and further inspection.

14.     Upon analyzing the seized documents, investigators learned that R. Jones, J. Jones, and Prinzing were all involved in multiple businesses and investment companies located in Oregon, California, and Missouri. Due to the number of businesses and intertwining of LLC's and DBA's, investigators believe these to be shell companies for the money laundering of illegal marijuana proceeds by R. Jones, Prinzing, and J. Jones. R. Jones kept extensive records for all the financial records of the businesses as well as notes and payroll documents for employees of the businesses.

15.     One business referenced was Meadowrock Investments LLC based in Oregon. This LLC was first filed on March 25, 2019, and the registered agent on file is J. Jones at 801 Coyote Creek Road in Wolf Creek, Oregon. Based on the documents, Meadowrock Investments appears to be used to purchase properties for R. Jones and J. Jones, which all are associated with marijuana growing.

16.     A second business identified for R. Jones and J. Jones was Jones and Son Construction, located in 305 South Kyler Suite 142, Monett, MO. Investigators were unable to identify any information on this company but did identify the address for the business as being associated with a Mailboxes & More business. An invoice for the construction business was found in the documents which showed a $15,000 invoice for the delivery and installation of assorted homecare products with a date of 11/11/16, to a company named Meds Direct located at 535 West 130th Street, Los Angeles, CA. Investigators were again unable to find information on this company but identified that the address did not appear to be valid, nor associated with Meds Direct at this time. Investigators did locate another document titled "Receivables" with three charts of dollar

amounts, which was in a file titled "Bob Jones." One table on the document showed the following information:

| Name | Units | Total Amount | Payments | Date | Balance |
|------|-------|-------------|----------|------|---------|
| Meds Direct | | | Payment History | | |
| Meds Direct – J&S | | $ 31,250.00 | $2,000.00 | 4/18/2017 | $ 68,750.00 |
| Meds Direct – JP | | $ 27,500.00 | $2,000.00 | 4/24/2017 | $ 66,750.00 |
| Bad units | 12/100 | $ 12,000.00 | $ 2,000.00 | 5/3/2017 | $ 64,750.00 |
| Total | | $ 70,750.00 | | | |

17.     Law enforcement believes the form and chart indicate that Meds Direct was making payments to Jones & Son Construction (J&S), and to a second company owned by R. Jones and Prinzing (JP Equine Transport LLC – "JP"), for an outstanding balance of $70,750.  This is based on the invoice from Jones & Son Construction to Meds Direction for $15,000 in 2016, which shows that Meds Direct was a customer of Jones and Son Construction; and the chart showing a beginning balance of $70,750.00 with $2,000 payments and a final total of $64,750.00. JP Equine Transport was another company identified from the seized documents during the search warrant, which showed R. Jones and Prinzing as the owners since November 2016 and with an address of 31805 Temecula Parkway #393, Temecula, CA. Based on this document, investigators believe R. Jones and J. Jones have been laundering money between shell companies for several years. Additionally, with the term "bad units" used, it appears as if it is referring to units of marijuana or marijuana extract.

18.    Regarding the JP Equine Transport business, investigators located an Articles of Organization document which showed that the LLC had been filed in the State of Missouri in 2016 and that both R. Jones and Prinzing were equal partners.

19.    Investigators also located numerous files to include the following:

| FILE NAMES | CONTENTS OF FILES |
|---|---|
| **Coyote Creek Grow Ledger** | Notes of payments to the City of Grants Pass for water, loads of water, labor costs of work on grow, fuel costs, costs for cement for grow |
| **Excavation Co. Receipt** | Time sheets for "Zack Sheets" for miscellaneous jobs, who is the registered owner of the business |
| **2017 PJ Goose Flatbed** | Title for the trailer showing the owner as Jones & Son Construction |
| **2018 Patriot Dump Trailer** | Receipt which showed the trailer was paid for in cash by R. Jones for Jones & Son Construction |
| **2012 Dodge Ram 3500** | Certificate of title showing the owners as R. Jones and J. Jones |
| **Receipts 2020** | Receipts for precious metal purchases for amounts ranging from 5,271 to 9,980 |
| **Alex Grow 2020** | Receipts for plant growing equipment and materials with the address of 995 Reuben Road, Glendale, Oregon which is owned by Meadowrock Investments |
| **2019 Grow** | Notes for workers/ "trimmers" and amounts paid to them, receipts for garden supplies, and equipment |
| **2021 Receipts** | Receipts for concrete work totaling more than $23,000 paid in cash, fencing work paid in cash for $2,373, toll road fee notices from New York with photos of R. Jones horse trailer driving through toll roads, hotel receipts from Georgia, receipt for house painting for $22,500 which appeared to be paid in cash |
| **Kubota Excavator** | Invoice for the purchase of the excavator showing a value of $70,000.00 which shows paid and purchased in July 2022, but with no form of payment indicated |
| **Transport 2/26 – 3/10** | Notes indicating strains of marijuana as "inventory" and the number of units being transported by multiple individuals |

20.    Of all the documents seized, R. Jones appeared to have records of all the business dealings, a 2017 tax return for J. Jones and his wife which showed a total

income of $79,341.00 for J. Jones (employed in Information Technology but with no W-2) and his wife (employed as a clerk again with no W-2) and a business loss of $5,855 from Jones & Son Construction LLC; 2018 federal and state income tax documents showing a gross income of $82,595.00 with the gross income coming from Meadowrock Investments for J. Jones as construction work; bank accounts; vehicle titles and registration paperwork; property documents; bank account records; employee time sheets for multiple businesses from 2018 to the present; and large purchase receipts (vehicles, equipment, precious metals, etc.). He did not have any personal tax returns for himself or Prinzing (the tax return found was his son). R. Jones' name would appear as the owner of several vehicles, equipment and part owner of businesses but again did not have any records indicating his income. Investigators did not locate tax returns or business records to indicate that R. Jones had a legitimate source of income.

21.    R. Jones also kept ledgers of "to do lists" which would indicate tasks like: "Give Josh Mortgage Cash," "Clean up grow out back," "Bury cash & pm's," "Total cash on hand 380,000," "Total equipment values incl. trucks & trailers," "Paying down ranch mortgage," "Reduce exposure @ Josh's," and other smaller household chores and house keeping projects. Additionally, R. Jones had notes on his real estate properties which he listed as Reuben Ranch, Montgomery, Cow Creek, Storage, Spec and Coyote Creek. R. Jones had a note about his will (as in last will and testament) which stated how R. Jones wanted the listed properties to be divided. R. Jones also had notes on his Transport Business (JP Equine Transport) which stated he needed to call various people to discuss "# of units del." "April delivery" "samples & status of our units" "new job status 600-700

units" and "payment of 39,720 on what was supposed to be 44,600," which all appear to be in reference to marijuana shipments and not horses.

22.    Based on all the documents viewed, investigators believe R. Jones has been manufacturing and delivering marijuana or marijuana extract for several years and has invested his profits into multiple properties and businesses. Investigators were not aware of the extent of R. Jones's financial and business dealings at the time the search warrant was served, and it appears that only a small portion has been identified and uncovered. In all the documents, there are several handwritten notes with various dollar amounts which law enforcement can not determine if they are expenses or profits and what the amounts are for.  For example, one note shows the following:

a.    Ben                 63,075.88

1,000? @ 50.00       50,000?

$119,075.00

23.    A second handwritten note in the documents shows the following, as possible future income amounts that R. Jones was planning for:

a.    Retirement Plan

Reuben Grow Coop               100k/yr

Anza Grow Coop                  100k/yr

Transport Coop                   120k/yr

Oil Coop                         50k/1st yr

24.    On October 31, 2022, R. Jones submitted administrative claims for the money, assorted precious metals, and vehicles/equipment seized from him.  On the forms, R. Jones claimed to have a personal property interest in the money, providing insurance

declaration pages and proof of ownership. However, the documents seized from R. Jones during the execution of the search warrant indicate that these assets were purchased primarily with cash by R. Jones, through companies or other individuals, and all with proceeds obtained from the distribution and manufacturing of marijuana.

## **CONCLUSION**

25.    Based on the foregoing and my training and investigative experience, I have probable cause to believe that the $402,740.00 United States Currency; Assorted Precious Metals (Gold and Silver coins/bars) valued at $279,183.10; a 2012 Dodge Ram 3500 Truck with 2014 Transfer Flow in -Bed Auxiliary Diesel Fuel Tank; a PJ 5th Wheel Low Pro Flatbed Trailer with Ramp; a Kubota SVL95-2S Track Skid Steer; a Kubota KX040-4 Excavator; a 2016 Load Trail Tilt Deck Trailer; a 2020 Dodge Commercial Ram 3500 Truck; a Carry-On Trailer Corp. Patriot Dump Trailer; a 2020 MultiQuip QP-2TH Water Pump with trailer; and a JCB 8035ZTS Compact Excavator, seized from Robert Jones, are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as money or other things of value furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to the exchange of controlled substances in violation of 21 U.S.C. § 841(a)(1).

///

///

///

///

///

///

Declaration of Juan Sierra

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 28th day of February 2023.


s/ *Juan Sierra*
Juan Sierra
Special Agent, DEA